

**United States Department of Justice**

United States Attorney
Southern District of West Virginia

Robert C. Byrd United States Courthouse
300 Virginia Street, East
Suite 4000
Charleston, WV 25301
1-800-659-8726

Mailing Address
Post Office Box 1713
Charleston, WV 25326
304-345-2200
FAX: 304-347-5104

October 10, 2012

FILED
NOV - 6 2013
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

W. Thomas Ward, Esq.
Ward & Associates PLLC
P.O. Box 628
Williamson, WV 25661-0628

      Re:    United States v. Aracoma Contracting, LLC
                 Criminal No. 2:13-00210

Dear Mr. Ward:

      This will confirm our conversations with regard to your client, Aracoma Contracting, LLC ("Aracoma"). As a result of these conversations, it is agreed by and between the United States and Aracoma as follows:

      1.    **CHARGING AGREEMENT.** Aracoma agrees to waive its right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a one-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

      2.    **RESOLUTION OF CHARGES.** Aracoma will plead guilty to a violation of 18 U.S.C. § 371 (conspiracy to structure currency transactions) as charged in said information.

      3.    **MAXIMUM POTENTIAL PENALTY.** The maximum penalty to which Aracoma will be exposed by virtue of this guilty plea is as follows:

                                                                            Defendant's Initials

W. Thomas Ward, Esq.
October 10, 2012                                         Re: Aracoma Contracting, LLC
Page 2

    (a)    A fine of $~~250,000~~ $500,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater; ~~and~~

    (b)    a term of probation of not less than one nor more than five years; and

    (c)    A mandatory special assessment of $400 pursuant to 18 U.S.C. § 3013.

*[initialed WTW]*

    4.    **SPECIAL ASSESSMENT.** Prior to the entry of a plea pursuant to this plea agreement, Aracoma will tender a check or money order to the Clerk of the United States District Court for $400, which check or money order shall indicate on its face the name of defendant and the case number. The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing. Aracoma will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement. If Aracoma fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement. In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Aracoma.

    5.    **FORFEITURE.** Notwithstanding the offense of conviction, Aracoma hereby agrees as follows:

    (a)    Aracoma, through authorized agents and employees and other individuals, structured approximately $2.2 million out of accounts held on deposit at the Bank of Mingo from approximately January 2009 to April 2012, of which approximately $2.2 million was structured out of the bank in the form of cashier's check drawn on a line of credit. Pursuant to 31 U.S.C. § 5317(c), Aracoma agrees to forfeit $405,000 (four hundred and five thousand dollars and zero cents), and as such, consents to the entry of judgment against Aracoma in this criminal action in the amount of $405,000 (four hundred and five thousand dollars), to be satisfied prior to sentencing;

    (b)    Aracoma agrees that its failure to undertake good faith efforts, including the collection of accounts receivable and liquidation of assets, prior to sentencing to satisfy this forfeiture judgment is a breach of a material term of this plea agreement and, accordingly, may be grounds for the United States to withdraw from this plea agreement and prosecute Aracoma and its agents, individually for Title 31-related charges; and

                                                                                    Defendant's Initials

W. Thomas Ward, Esq.  
October 10, 2012                                          Re: Aracoma Contracting, LLC  
Page 3

(c)     To waive any defenses to this criminal action, or to any related administrative or judicial forfeiture action, based in whole or in part on the Excessive Fines Clause of the Eighth Amendment to the Constitution, or the holding or principles set forth in United States v. Alexander, 509 U.S. 544 (1993); United States v. Bajakajian, 524 U.S. 321 (1998); United States v. Austin, 509 U.S. 602 (1993) and their progeny.

6.    **PAYMENT OF MONETARY PENALTIES.** Aracoma agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Aracoma further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

7.    **COOPERATION.** Aracoma will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Aracoma may have counsel present except when appearing before a grand jury. Further, Aracoma agrees to be named as an unindicted co-conspirator and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

8.    **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Aracoma, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by Aracoma pursuant to this agreement, or any evidence developed therefrom, will be used against Aracoma, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9.    **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Aracoma for any

_____  
Defendant's Initials

W. Thomas Ward, Esq.  
October 10, 2012  Re: Aracoma Contracting, LLC  
Page 4

violations of federal or state laws. The United States reserves the right to prosecute Aracoma for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Aracoma stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Araacoma agrees that if it withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Aracoma, and Aracoma is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Aracoma or of any of its witnesses, or in rebuttal of any testimony introduced by Aracoma or on its behalf. Aracoma knowingly and voluntarily waives, see *United States v. Mezzanatto*, 513 U.S. 196 (1995), any right it has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Aracoma understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Aracoma agree that the following provisions of the United States Sentencing Guidelines apply to this case.

Count One of the Information

USSG §§ 2S1.3 and 2B1.1

Base offense level                                                              6

Loss greater than $1 million  
    but less than $2.5 million                                           + 16

_____  
Defendant's Initials

W. Thomas Ward, Esq.  
October 10, 2012                                                    Re: Aracoma Contracting, LLC  
Page 5

| | |
|---|---|
| Promotion of Unlawful Activity | + 2 |
| Pattern of Unlawful Activity Exceeding $100,000 in 12-Month Period | + 2 |
| Adjusted Offense Level | 26 |

USSG § 8C2.4 (d)

| | |
|---|---|
| Base Fine | $3,700,000 |

USSG § 8C2.5

| | |
|---|---|
| (a) Base | 5 |
| (b) (5) organization of more than 10 employees | +1 |
| (g) Cooperation and acceptance of responsibility | -2 |
| Culpability Score | +4 |
| USSG § 8C2.6 Multipliers | .80 to 1.60 |

USSG § 8C2.7

| | |
|---|---|
| Fine Range (multiplier of .8 and 1.60) | $2,960,000 to $5,920,000 |

In light of forfeiture, and based on a preliminary evaluation of Aracoma's assets, the parties agree that pursuant to USSG § 8C2.2(b), Aracoma cannot pay the minimum fine as calculated by USSG §§ 8C2.2 through 8C2.7. Accordingly, the Court should impose a fine, if any, pursuant to USSG § 8C3.3.

The United States and Aracoma acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing

Defendant's Initials

W. Thomas Ward, Esq.
October 10, 2012                                                         Re: Aracoma Contracting, LLC
Page 6

Guidelines and the parties' agreement on the ability of Aracoma to pay a fine as set forth above, and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

    12.    **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Aracoma is aware that 18 U.S.C. § 3742 affords it the right to appeal the sentence imposed by the District Court. Nonetheless, Aracoma knowingly and voluntarily waives the right to seek appellate review of any sentence imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty prescribed by statute.

    Aracoma also knowingly and voluntarily waives the right to challenge the guilty plea and conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

    The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

    13.    **WAIVER OF FOIA AND PRIVACY RIGHT.** Aracoma knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

    14.    **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

    (a)    Inform the Probation Office and the Court of all relevant facts and conduct;

                                                                                                Defendant's Initials

W. Thomas Ward, Esq.  
October 10, 2012                                                 Re: Aracoma Contracting, LLC  
Page 7

(b)     Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c)     Respond to questions raised by the Court;

(d)     Correct inaccuracies or inadequacies in the presentence report;

(e)     Respond to statements made to the Court by or on behalf of Aracoma;

(f)     Advise the Court concerning the nature and extent of Aracoma's cooperation; and

(g)     Address the Court regarding the issue of Aracoma's acceptance of responsibility.

15. **VOIDING OF AGREEMENT.** If either the United States or Aracoma violates the terms of this agreement, the other party will have the right to void this agreement. If the Court refuses to accept this agreement, it shall be void.

16. **ENTIRETY OF AGREEMENT.** This written agreement constitutes the entire agreement between the United States and Aracoma in this matter. There are no agreements, understandings or recommendations as to any other pending or future charges against Aracoma in any Court other than the United States District Court for the Southern District of West Virginia.

Acknowledged and agreed to on behalf of the United States:

                                                  R. BOOTH GOODWIN II  
                                                  United States Attorney

By: _/s/_  
                                                  THOMAS C. RYAN  
                                                  Assistant United States Attorney

TCR/sdw

                                                                              Defendant's Initials

W. Thomas Ward, Esq.  
October 10, 2012  Re: Aracoma Contracting, LLC
Page 8

_____
Defendant's Initials

W. Thomas Ward, Esq.  
October 10, 2012                                        Re: Aracoma Contracting, LLC  
Page 9

On behalf of Aracoma, I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this eight-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement. I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

ARACOMA CONTRACTING, LLC  
Defendant

_/s/ Jerome E. Russell_                _10-11-2012_  
BY: JEROME EDWARD RUSSELL      Date Signed  
Member

_/s/ W. Thomas Ward_                  _10-11-2012_  
W. THOMAS WARD                       Date Signed  
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                              CRIMINAL NO. _____
                                      18 U.S.C. § 371

ARACOMA CONTRACTING, LLC

# INFORMATION

The United States Attorney Charges:

**(Conspiracy to Structure Currency Transactions)**

1. From at least January 2009 through and until at least April 2012, at or near Williamson, Mingo County, West Virginia, within the Southern District and elsewhere, Defendant ARACOMA CONTRACTING, LLC ("ARACOMA"), by and through its agents and employees, and other individuals and entities known and unknown to the United States Attorney, did knowingly conspire together to commit offenses against the United States, that is, to structure currency transactions with a domestic financial institution in increments of $10,000 or less to evade, and attempt to evade, the domestic financial institution's reporting requirements of 31 U.S.C. § 5313(a) and the regulations prescribed under it, in violation of 31 U.S.C. §§ 5324(a)(1) and 5324(a)(3).

**PLEA AGREEMENT EXHIBIT A**

## Background

At all relevant times:

2. Defendant ARACOMA was an employee-leasing company, which provided contract labor services to coal mining and coal-mining related operations in southern West Virginia.

3. Defendant ARACOMA was responsible for all employee-related expenses, including Mine Safety Health Administration ("MSHA") training certifications, personal income tax withholdings, the payment of Federal Insurance Contribution Act and Medicare taxes (collectively "employment taxes"), workers' compensation insurance and unemployment compensation insurance.

4. From at least January 2009 through and until at least April 2012, defendant ARACOMA maintained business accounts at Bank of Mingo, a domestic financial institution as defined in Title 31, United States Code, Section 5312, which was engaged in, and the activities of which affected, interstate commerce.

5. Title 31, United States Code, Section 5313(a) and the regulations prescribed under it required that a domestic financial institution involved in a financial transaction for the payment, transfer, or receipt of more than $10,000 in United States currency or coin file with the Internal Revenue Service a report known as a "Currency Transaction Report."

6. "Structuring," which is prohibited under federal law pursuant to 31 U.S.C. § 5324, is illegal conduct in which a person or persons unlawfully engage in currency

**PLEA AGREEMENT EXHIBIT A**

transactions with a financial institution, that is, typically either the deposit or withdrawal of cash, in such a manner to cause, or attempt to cause, the financial institution to fail to file a Currency Transaction Report, as required by 31 U.S.C. § 5313(a) and the regulations prescribed under it.

### Object of the Conspiracy

7. It was an object of the conspiracy for defendant ARACOMA, aided and abetted by other individuals and entities, to structure hundreds of cash withdrawals from Bank of Mingo in increments of $10,000 or less to avoid bank reporting requirements, so defendant ARACOMA could pay a number of its employees in cash wages, thereby evading the payment of employment taxes.

### Overt Acts In Furtherance Of The Conspiracy

8. In execution of the conspiracy described above and to effect its object, on or about the following dates, defendant ARACOMA, through its agents, employees or individuals acting on its behalf, and its co-conspirators would and did commit the following overt acts, that is, withdraw cash out of Bank of Mingo:

a. **2009 Structured Cash Withdrawals**

| Date | Initials of Individual | Amount | Bank Branch |
| --- | --- | --- | --- |
| 01/26/2009 | A.D. | $9,548.50 | Williamson |
| 01/26/2009 | E.R. | $9,423.50 | Williamson |
| 01/26/2009 | L.C. | $6,185.00 | Williamson |

PLEA AGREEMENT EXHIBIT A

| Date | Initials | Amount | Branch |
|---|---|---|---|
| 02/09/2009 | E.R. | $4,000.00 | Williamson |
| 02/09/2009 | E.R. | $9,736.50 | Williamson |
| 08/10/2009 | A.D. | $9,819.75 | Williamson |
| 08/10/2009 | L.C. | $9,811.25 | Williamson |
| 08/25/2009 | J.R. | $5,000.00 | Williamson |
| 08/25/2009 | A.D. | $9,375.00 | Williamson |
| 08/25/2009 | L.C. | $5,875.00 | Williamson |
| 09/21/2009 | L.C. | $9,988.25 | Williamson |
| 09/21/2009 | R.W. | $9,778.50 | Williamson |
| 09/21/2009 | J.R. | $5,000.00 | Williamson |

b. **2010 Structured Cash Withdrawals**

| Date | Initials of Individual | Amount | Branch |
|---|---|---|---|
| 01/19/2010 | A.D. | $9,604.00 | Williamson |
| 01/19/2010 | E.R. | $9,571.75 | Williamson |
| 01/19/2010 | L.C. | $9,738.50 | Williamson |
| 02/22/2010 | A.D. | $9,927.25 | Williamson |
| 02/22/2010 | E.S. | $9,937.50 | Williamson |
| 02/22/2010 | R.W. | $9,957.50 | Williamson |
| 02/22/2010 | E.R. | $9,944.50 | Williamson |
| 04/12/2010 | E.R. | $9,949.00 | Williamson |
| 04/12/2010 | A.D. | $9,668.50 | Williamson |
| 12/06/2010 | F.W. | $9,965.25 | Williamson |
| 12/06/2010 | E.R. | $4,000.00 | Williamson |
| 12/14/2010 | E.S. | $9,552.75 | Williamson |
| 12/14/2010 | D.S. | $9,960.75 | Williamson |
| 12/14/2010 | E.R. | $9,881.50 | Williamson |

PLEA AGREEMENT EXHIBIT A

4

### c. 2011 Structured Cash Withdrawals

| Date | Initials of Individual | Amount | Branch |
|---|---|---|---|
| 02/08/2011 | R.W. | $9,979.00 | Williamson |
| 02/08/2011 | E.S. | $9,812.75 | Williamson |
| 02/08/2011 | E.R. | $9,992.50 | Williamson |
| 02/08/2011 | L.C. | $9,928.50 | Williamson |
| 03/01/2011 | E.S. | $9,966.00 | Williamson |
| 03/01/2011 | D.S. | $9,803.25 | Williamson |
| 03/01/2011 | L.C. | $9,920.00 | Williamson |
| 03/15/2011 | E.S. | $9,950.25 | Williamson |
| 03/15/2011 | E.S. | $3,480.00 | Williamson |
| 03/15/2011 | F.W. | $9,995.50 | Williamson |
| 05/24/2011 | E.R. | $9,973.25 | Williamson |
| 05/24/2011 | F.W. | $9,996.00 | Williamson |
| 05/24/2011 | E.S. | $9,975.75 | Williamson |
| 12/20/2011 | D.S. | $7,357.75 | Williamson |
| 12/20/2011 | E.S. | $9,965.75 | Williamson |

### d. 2012 Structured Cash Withdrawals

| Date | Initials of Individual | Amount | Branch |
|---|---|---|---|
| 01/23/2012 | E.R. | $9,983.75 | Williamson |
| 01/23/2012 | E.S. | $9,981.00 | Williamson |
| 01/24/2012 | E.S. | $8,617.50 | Williamson |
| 01/24/2012 | D.S. | $9,965.00 | Williamson |
| 02/27/2012 | E.R. | $9,923.25 | Williamson |
| 02/27/2012 | L.C. | $9,990.25 | Williamson |

**PLEA AGREEMENT EXHIBIT A**

5

| | | | |
|---|---|---|---|
| 03/19/2012 | E.S. | $9,972.25 | Williamson |
| 03/19/2012 | D.S. | $9,940.00 | Williamson |
| 04/02/2012 | L.C. | $9,099.50 | Williamson |
| 04/02/2012 | E.S. | $9,942.75 | Williamson |

9. To facilitate the structured cash withdrawals, defendant ARACOMA would and did, either by telephone or facsimile, contact individuals employed by Bank of Mingo in advance of the cash withdrawals and advise said employees of the desired denominations of the cash withdrawals and identify the individuals who would be coming to the Williamson branch of Bank of Mingo later that same day to withdraw the cash.

10. Bank of Mingo employees would and did prepare a cashier's check for the individuals identified by defendant ARACOMA and would and did prepare the cash in the desired denominations.

11. Upon arrival, said individuals would and did appear at a teller window, often together if the desired cash withdrawal exceeded $10,000, and endorse the cashier's checks.

12. Bank of Mingo employees would and did immediately provide the individuals cash in denominations consistent with the previously provided instructions, sometimes totaling more than $10,000.

13. Bank of Mingo would and did fail to file a Currency Transaction Report in violation of its obligations under Title 31, United States Code, Section 5313(a) and the

PLEA AGREEMENT EXHIBIT A

regulations prescribed under it, allowing defendant ARACOMA's pattern of structuring activity to not be reported to the Internal Revenue Service, as required by law.

14. Defendant ARACOMA would and did use cash obtained from Bank of Mingo to pay a number of its employees, for the purpose of evading the payment of employment taxes.

15. Defendant ARACOMA would and did use cash obtained from Bank of Mingo to bribe an employee of BrickStreet Mutual Insurance Company, who was entrusted to honestly and faithfully perform audits for the purposes of accurately calculating Defendant ARACOMA's workers' compensation insurance premium.

In violation of Title 18, United States Code, Section 371.

PLEA AGREEMENT EXHIBIT A

7

## FORFEITURE

In accordance with 31 U.S.C. § 5317(c)(1) and Rule 32.2(a) of the Federal Rules of Criminal Procedure, and premised upon the conviction of Defendant Aracoma Contracting, LLC for a violation of 18 U.S.C. § 371 (conspiracy to structure) as set forth in Count One of this Information, Defendant shall forfeit to the United States the sum of $405,000 in United States currency.

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney

By: _____
THOMAS C. RYAN
Assistant United States Attorney

PLEA AGREEMENT EXHIBIT A

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.

ARACOMA CONTRACTING, LLC

## STIPULATION OF FACTS

The United States and Aracoma Contracting, LLC ("Aracoma") stipulate and agree that the facts comprising the offense of conviction in the Information in the Southern District of West Virginia, include the following:

In approximately November 2007, Jerome Edward Russell ("Russell") and Frelin R. Workman ("Workman") formed Aracoma for the purpose of engaging in the business of providing contract labor to coal mining and coal-mining related operations in southern West Virginia. Russell and Workman placed Aracoma in the name of a nominee owner.

For the purpose of evading the payment of, among other things, Federal Insurance Contribution Act and Medicare taxes (collectively "employment taxes") for its employees in violation of Title 26, United States Code, Section 7202, Aracoma routinely paid certain employees unreported cash wages and required no withholdings for tax purposes.

Russell and Workman had a longstanding banking relationship with Bank of Mingo and, particularly, one of its employees at the Williamson branch ("BOM Branch Manager"). To generate sufficient cash to pay cash payroll, Russell and Workman enlisted the assistance of a number of individuals who agreed to appear at the Williamson branch of Bank of Mingo and cash cashier's checks made payable to that individual, even though the cash would be brought back to Aracoma's office to be used to pay cash payroll. For the purpose of

_____
Defendant's Initials

**PLEA AGREEMENT EXHIBIT B**

1

explaining the frequent cash withdrawals, Russell told the BOM Branch Manager that Aracoma needed the cash to pay employees working out of the immediate region because out-of-area banks would not accept Aracoma paychecks.

Russell and Workman were aware of Bank of Mingo's requirement to file a report, known as a Currency Transaction Report or "CTR," for any cash involving more than $10,000. They purposefully broke down cash withdrawals from Aracoma's line of credit to avoid the filing of CTRs, by either sending more than one individual to the bank together to withdraw cash or send individuals on successive days to make cash withdrawals. This pattern of activity is illegal conduct commonly referred to as "structuring."

From January 2009 through April 2012, Aracoma, by and through its agents, including Russell and Workman, structured at least $2.2 million out of Bank of Mingo. To facilitate the frequent cash withdrawals, Aracoma was given a form that it could send to the Williamson branch in advance of the cash withdrawals so Bank of Mingo could prepare the cash. Aracoma would either by phone or facsimile contact Bank of Mingo to advise who would be appearing at the Williamson branch for a cash withdrawal and the desired breakdown of denominations.

Bank of Mingo would then prepare cashier's checks in the names of the identified individual or individuals and pre-count the requested cash. When the individual or individuals from Aracoma appeared at a teller window, a Bank of Mingo teller presented them with the cashier's check in the individual's name, which was immediately endorsed, and said individual or individuals were given the pre-counted cash.

Despite occasions when multiple individuals would appear at the same teller window at the Williamson branch of Bank of Mingo to endorse cashier's checks on Aracoma's line of credit collectively in excess of $10,000, Bank of Mingo routinely failed to file CTRs, in violation of Title 31, United States Code, Section 5313(a), and the regulations prescribed under it, thereby allowing Aracoma's structuring activity to go undetected for years.

On one occasion after a bank examiner's audit, the BOM Branch Manager met with Russell and Workman and advised them to occasionally cash a check in excess of $10,000 to create the appearance that they were not engaged in an extensive pattern of structuring.

The cash structured out of Bank of Mingo by Aracoma was used to pay cash payroll for the purpose of evading the payment of employment taxes and also to make bribe

Defendant's Initials

**PLEA AGREEMENT EXHIBIT B**

2

payments to an employee of BrickStreet Mutual Insurance Company for the purpose of falsifying Aracoma's workers' compensation insurance premium audits.

This agreement is based upon information available to the parties as of the date of this agreement.

This Stipulation of Facts does not contain each and every fact known to Aracoma and to the United States concerning Aracoma's involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

ARACOMA CONTRACTING, LLC
Defendant

_____        10-11-2013
BY: JEROME EDWARD RUSSELL              Date
Member

_____        10-11-2012
W. THOMAS WARD                          Date
Counsel for Defendant

_____        12/12/12
THOMAS C. RYAN                          Date
Assistant United States Attorney

Defendant's Initials

**PLEA AGREEMENT EXHIBIT B**

3